**UROPLASTY, INC., Plaintiff–Appellant,**

v.

**ADVANCED UROSCIENCE, INC., Brennen Medical, Inc., and Timothy Lawin, Defendants–Appellees.**

No. 00–1185.

United States Court of Appeals, Federal Circuit.

Feb. 8, 2001.

Charles H. De La Garza, Fulbright & Jaworski, of Austin, Texas, argued for plaintiff-appellant. With him on the brief was H. Melissa Mather.

Robert D. Maher, Best & Flanagan LLP, of Minneapolis, Minnesota; and Charles L. Gholz, Oblon, Spivak, McClel-land, Maier & Neustadt, P.C., of Arlington, Virginia, argued for defendants-appellees. With them on the brief was Caryn S. Glover, Best & Flanagan LLP, of Minneapolis, Minnesota.

Before MAYER, Chief Judge, MICHEL and DYK, Circuit Judges.

MAYER, Chief Judge.

Uroplasty, Inc. (Uroplasty) appeals the judgment of the United States District Court for the District of Minnesota granting summary judgment that Advanced Uroscience, Inc., Brennen Medical, Inc., and Timothy Lawin (collectively, UroScience) did not misappropriate Uroplasty's trade secrets and did not breach contracts with or fiduciary duties to Uroplasty. *See Uroplasty, Inc. v. Advanced UroScience, Inc.,* No. 98–2082 (D.Minn. Nov. 5, 1999). Because the action does not arise under the federal patent law and removal from state court was improper, we vacate and remand with instructions to dismiss for lack of jurisdiction.

## Background

Uroplasty is the wholly owned subsidiary of Bioplasty, Inc. (Bioplasty). Bioplasty's founders, Robert Ersek and Arthur Beisang, conducted research into bulking agents for urinary incontinence, including animal tests in 1990 and 1991. The tests involved mixing carbon-coated microparticles of various sizes (some of which were radioactive to aid in tracking) with textured silicone microparticles. Ersek and Beisang licensed all intellectual property rights to their urological research to Bioplasty through a 1991 licensing agreement. Bioplasty's entire urology business was transferred to Uroplasty under a 1992 purchase agreement.

Timothy Lawin began work for Bioplasty as an accountant in 1984 and later occupied many positions culminating as

chief executive officer and director. He entered into a series of agreements during his tenure that restricted his use or disclosure of Bioplasty's trade secrets and that contained non-competition provisions. In 1993, he resigned his positions with Bioplasty and Uroplasty.

Lawin became the chairman and CEO of Brennen Medical and chairman of Advanced UroScience. Lawin sued Bioplasty seeking indemnification for a 1991 lawsuit against Bioplasty and Lawin. He settled with Bioplasty in a 1994 settlement agreement which released him and Brennen Medical from all actions which Bioplasty or its creditors may then or in the future have "arising out of or in connection with, the prior actions of the parties to the agreement."

After leaving Bioplasty, Lawin filed a patent application as co-inventor on the technology of pyrolitic carbon-coated microparticles, which issued as U.S. Patent No. 5,451,406 ('406 patent) in 1995. Uroplasty sued UroScience in Minnesota state district court for misappropriation of trade secrets, breach of fiduciary duty, and breach of contract alleging that UroScience improperly used and divulged trade secrets and confidential information. UroScience removed the case to the district court citing an interference Uroplasty had filed against the '406 patent that allegedly "call[ed] into question whether such Application and Patent make use of or are in any way based upon confidential information and trade secrets of Uroplasty [and] ... [b]y the nature of the claimed misappropriation ... raised issues relating to an Application for a United States Patent and the issuance of a United States Patent," thereby alleging causes of action under 28 U.S.C. § 1338(a).

The district court granted summary judgment of no trade secret misappropriation because Uroplasty did not present evidence that it was involved in the re-search and development of pyrolitic carbon-coated microparticles. The court also granted summary judgment that UroScience did not breach its contracts with or fiduciary duties to Uroplasty because those claims relied on proof of trade secret misappropriation. Uroplasty appeals.

## Discussion

■ A case may only be removed from state to federal court if it originally could have been brought in federal court. 28 U.S.C. § 1441 (1994). *See, e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). Jurisdiction exists under 28 U.S.C. § 1338(a) if an action "arises under the federal patent laws." That is to say, jurisdiction extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt,* 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811, 7 USPQ2d 1109, 1113 (1988). It is undisputed that the state law claims themselves do not confer federal jurisdiction. We are, therefore, left to consider whether patent law is a necessary element of one of the well-pleaded state law claims.

■ A claim supported by alternative theories in the complaint may not form the basis for section 1338(a) jurisdiction unless patent law is essential to each of those theories. *Id.* at 810, 108 S.Ct. 2166, 100 L.Ed.2d 811, 7 USPQ2d at 1114. We held in *AT & T Co. v. Integrated Network Corp.* that claims of misappropriation of proprietary information, breach of fiduciary duty, and breach of contract did not present a substantial question of patent law where a

company sued its former employees and their new company after those employees allegedly divulged proprietary information that was later included in a patent. 972 F.2d 1321, 1324, 23 USPQ2d 1918, 1920 (Fed.Cir.1992). The only mention of a patent in Uroplasty's well-pleaded complaint are the allegations that Lawin used and divulged Uroplasty's trade secrets and confidential information by acts that included the preparation and filing of the application for the '406 patent and his involvement in the testing of urological bulking agents described in the patent. The '406 patent may be evidence in support of Uroplasty's allegations, but the mere presence of the patent does not create a substantial issue of patent law. *Consol. World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265, 4 USPQ2d 1565, 1568 (Fed. Cir.1987) ("[A]s this court has repeatedly said, the mere presence of a patent issue cannot of itself create a cause of action arising under the patent laws."). Uroplasty's claims for trade secret misappropriation require it to show that Lawin disclosed or used its trade secrets or confidential information, a burden that can be met without requiring the resolution of a substantial issue of patent law. Because proving the same alleged acts also could support the breach of contract and fiduciary duty claims without resolving a substantial patent issue, patent law is not essential to any of the claims of the well-pleaded complaint.

### Conclusion

Accordingly, the judgment of the United States District Court for the District of Minnesota is vacated and the case is remanded with instructions to dismiss for lack of jurisdiction.

### Costs

Each party shall bear its own costs.

*VACATED AND REMANDED.*