**Lawrence OBSTFELD, individually and derivatively on behalf of Toev Medical Corporation, and Ignition Ventures, Inc., Plaintiffs,**

v.

**Arthur SCHWARTZ, Ronald Solar, Renaissance Biomedical, Inc., Glen Lieber and ThermopeutiX, Inc., Defendants.**

**No. 07 Civ. 5847 (DAB).**

United States District Court,
S.D. New York.

June 30, 2008.

Marc Monoah Isaac, Law Office of Marc M. Isaac PLLC, Freeport, NY, for Plaintiff.

Walter Cameron Beard, III, Blank Rome LLP, Kerin Elizabeth Coughlin, Stacey Anne Mahoney, Constantine Cannon PC, New York, NY, Jeffrey C. McElroy, Richard P. McElroy, McElroy & Associates, LLP, Media, PA, Laurie Jean Miller, Fredrikson & Byron, P.A., Minneapolis, MN, for Defendants.

### MEMORANDUM & ORDER

DEBORAH A. BATTS, District Judge.

Plaintiffs Lawrence Obstfeld ("Obstfeld"), individually and derivatively on behalf of Toev Medical Corporation ("Toev") and Ignition Ventures, Inc. ("Ignition") (collectively, "Plaintiffs") filed suit against Defendants Arthur Schwartz ("Schwartz"), Ronald Solar ("Solar"), Renaissance Biomedical ("Renaissance"), Inq., Glen Lieber ("Lieber") and ThermopeutiX, Inc. ("ThermopeutiX") (collectively, "Defendants") alleging breach of fiduciary duty, tortious interference with contract, tortious interference with business relations, conversion, breach of contractor corporations laws and misappropriation of trade secrets in connection with the alleged failure of Toev, a medical start-up company and the subsequent formation of ThermopeutiX, a second medical start-up company. (Am. Compl. ¶¶ 1, 15 & 41.) Defendants now move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") on the grounds that the Amended Complaint fails to invoke federal question jurisdiction and because complete diversity of citizenship between the Parties is lacking. In the alternative, Defendants move to dismiss on the following grounds: that Plaintiffs fail to meet the prerequisites for pleading a derivative action under Fed. R. Civ. P. Rule 23.1; that, under Fed. R. Civ. P. 12(b)(2), personal jurisdiction over Lieber is lacking; that the Amended Complaint's second, fourth and fifth causes of action are time-barred and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Defendants' Motion to Dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is GRANTED.[1]

### BACKGROUND

In 2000, Schwartz and Obstfeld formed Toev for the express purpose of further developing and commercializing the Brain Cooling Method and related medical advances which were developed by Schwartz to assist in alleviating many of the detrimental effects of strokes. (Am. Compl. ¶ 15.) Obstfeld lives in New York. (Id. ¶ 7.) Schwartz, an anesthesiologist and former professor at Columbia University, lives in New Jersey. (Id. ¶¶ 10 & 14.) Toev is a Delaware corporation. (Id. ¶ 6.)

Schwartz developed the BCM while he was a professor at Columbia and as a result Columbia University owned several of the Brain Cooling Method's component patents (the "Columbia Patents"). (Id. ¶ 18.) On February 4, 2000, Toev and Columbia University entered into a licensing agreement and a stock purchase agreement ("Stock Purchase Agreement"), whereby Toev purchased a license to the Columbia Patents. (Id. ¶ 22.) On August 18, 2003, Schwartz executed and issued the following notice in his capacity as president of the Toev:

---

1. Because the Court finds that it lacks subject matter jurisdiction, it does not reach Defendants' alternative bases for dismissal.

Pursuant to Section 228 of the General Corporation Law of the State of Delaware[2] Toev Medical Corporation (the "Corporation") hereby notifies you that, in a written consent dated as of August 18, 2003, the holders of a majority of the total number of outstanding shares of Common Stock entitled to vote at a meeting of shareholders of the Corporation elected Arthur Schwartz as the sole director of the Corporation to constitute the entire Board of Directors of the Corporation, and to hold office, subject to the terms and provisions of the Corporation's by-laws until the next annual meeting of shareholders or until his successor or successors are elected and qualify.

(Obstfeld Decl. Ex. E.) In December 2003, Toev's corporate charter lapsed on account of Toev's failure to pay franchise taxes. (*Id.* ¶ 34.)

On May 27, 2004, more than three years before Plaintiffs filed suit, Defendants Schwartz, Solar, Lieber and Renaissance formed ThermopeutiX for the alleged purpose of benefiting from misappropriation of technological advances belonging to Toev. (*Id.* ¶¶ 11–13, 38–39.) Solar lives in California, is a medical device engineer and the chief executive officer of Toev. Lieber also lives in California and is a former officer and shareholder of Toev. Renaissance is a California corporation that Toev retained as a consultant. (*Id.*) Defendants are allegedly officers, directors and/or shareholders of ThermopeutiX at the present time. (*Id.* ¶¶ 38 & 39.) Defendant ThermopeutiX, like Toev, is a Delaware corporation. (*Id.* ¶ 9.)

On June 20 2004, Schwartz announced to Columbia University that, effective immediately, he was "relinquishing ownership of all of his shares of stock in Toev, assigning those shares to Toev, and resigning from his position as an officer and director of Toev." (*Id.* ¶ 43.) Plaintiffs allege that "[a]s a result of Schwartz's purported resignation and abandonment of Toev, Toev was left without a board of directors." (*Id.* ¶ 44.) Plaintiffs claim that although he was the sole director of Toev and had owned more than 70% of its stock, "he made no effort to fill the vacancy left by his purported resignation as the sole director of Toev." (*Id.* ¶ 45.) Other than providing notice of the resignation to Columbia University, Schwartz allegedly failed to provide notice to Toev's other shareholders, including Obstfeld. (*Id.* ¶ 46.)

With respect to the composition of the board of directors, the corporate by-laws of Toev provide, in pertinent part, that:

Each director shall hold office until the annual meeting of the shareholders next succeeding his election, and until his successor is elected and qualified, or un-

---

**2.** Section 228(a) of the Delaware General Corporation Law provides:

Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the corporation by delivery to its registered office in this State, its principal place of business or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to a corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

8 Del. C. § 228(a).

til his prior death, resignation or removal.

(Obstfeld Decl. Ex. C at Art. III, Sec. 1(c).) Furthermore, the Toev's by-laws provide as follows with respect to the resignation of directors:

Any director may resign at any time by giving written notice to the Board of Directors, the President or the Secretary of the Corporation. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the Board of Directors or such officer, and the acceptance of such resignation shall not be necessary to make it effective.

(*Id.* Ex. C at Art. III, Sec. 9.) Toev's by-laws contain identical provisions with respect to the resignations of corporate officers. (*See id.* Ex. C at Art. IV, Secs. 1(c) & 2.)

Plaintiff Obstfeld, a Toev shareholder, alleges that he loaned Toev $50,000 in 2000 and that he in entitled to additional compensation pursuant to the licensing agreement between Toev and Columbia University. (*Id.* ¶¶ 20–23.) According to the Amended Complaint, "[s]oon after Toev received the $50,000 from Obstfeld to purchase the license to the Columbia Patents, Schwartz froze Obstfeld out of Toev and refused to allow Obstfeld access to any Toev corporate information." (*Id.* ¶ 25.) Plaintiffs also allege, upon information and belief, that "ThermopeutiX has submitted an application for a patent for respects of the Brain Cooling Method and other proprietary medical technologies that had been misappropriated from Toev by Schwartz, Solar, Lieber, and Renaissance." (*Id.* ¶ 51.) Obstfeld purports to bring this action derivatively on behalf of Toev, in addition to on his own behalf. (*Id.* ¶ 52.)

The Amended Complaint's first cause of action alleges that Schwartz, Solar, Lieber and Renaissance breached their fiduciary duties by usurping corporate opportunities, forming ThermopeutiX and making use of their respective positions in Toev to engage in self-interested transactions. (*Id.* ¶ 55.) Plaintiffs' second cause of action relates to Defendants' alleged breach of fiduciary duty to the extent that it allegedly prevented Toev from meeting its obligations to repay a loan from Obstfeld which had been made previously for the purpose of purchasing license to the Columbia University Patents. (*Id.* ¶¶ 20 & 61.) Plaintiffs' third cause of action is for tortious interference with contract and alleges that Schwartz, Solar, Lieber and Renaissance induced Toev to breach an agreement with Plaintiff Ignition. (*Id.* ¶ 66.) Plaintiffs' fourth cause of action is for tortuous interference with business relations and is based on allegations that Solar refused to allow Toev to take into consideration investment offers allegedly made to Toev through Ignition and that Defendants all breached their fiduciary duties to Toev when they formed ThermopeutiX. (*Id.* ¶¶ 73–74.) Plaintiffs' fifth cause of action for conversion claims that Defendants "wrongfully exercised dominion and control over the Brain Cooling Method and other proprietary information belonging to Toev." (*Id.* ¶ 78.) Plaintiffs' sixth cause of action is for breach of the Stock Purchase Agreement and the Toev shareholder agreement in addition to violations of Delaware corporations law, whereby Defendants allegedly engaged in "general acts of self-dealing and oppression of minority shareholders." (*Id.* ¶ 82.) Plaintiffs' seventh cause of action is for misappropriation of trade secrets and is grounded in Defendants' alleged misappropriation of Toev's confidential and proprietary information through the formation of ThermopeutiX. (*Id.* ¶ 78.)

The Amended Complaint alleges that the Court has diversity subject matter ju-

risdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because "[t]here is complete diversity of citizenship between the parties to this action and the amount in controversy exceeds $75,000, exclusive of interest and costs." (*Id.* ¶ 2.) The Amended Complaint also alleges, however, that both Plaintiff Toev and Defendant ThermopeutiX are Delaware corporations and therefore citizens of that state. (*Id.* ¶¶ 6 & 9.) Plaintiffs argue that Toev, although named as a plaintiff in the Amended Complaint, should be aligned as a defendant by the Court because to do so would accurately reflect the antagonisms between the Parties to this action. (Pls.' Opp. at 4.)

The Amended Complaint also alleges that the Court has federal question subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1338(a), because it "involves a dispute concerning a patent." (Am. Compl. ¶ 3.) Plaintiffs argue that the resolution of their conversion and misappropriation of trade secrets claims necessarily require the Court to consider whether a patent application submitted by Defendant ThermopeutiX in 2005, "upon maturation into a patent would, in whole or in part, infringe upon the exclusive license to the Columbia Patents held by Toev." (Pls.' Opp. at 10.)

The Amended Complaint alleges however, that the Columbia Patents cover "a limited component of the Brain Cooling Method." (Am. Compl. ¶ 18.) The Stock Purchasing Agreement by which Toev obtained an exclusive license to the Columbia Patents defines the patent being licensed as "patent application Serial No. 09–330,-428, filed June 8, 1999 entitled 'Intravascular Catheter with Pressure–Dependent Valve' ... and any patent issuing therefrom ...." (Obstfeld Decl. Ex. A at 1.) The Stock Purchasing Agreement principally granted Toev an exclusive license under that patent application to "develop,

manufacture, use, sell, have sold, rent, or lease" and products used for the "super cooling of the brain" and the "super cooling of one or more kidneys". (*Id.* Ex. A at 1–2.) The Stock Purchasing Agreement also granted Toev an exclusive license to use for the same purposes, "all information conveyed by Columbia to [Toev] relating to the technology claimed under the Patents." (*Id.* at Ex. A at 1.) The agreement was essentially for Toev to "use its best efforts to develop and market Products for commercial sale and distribution." (*Id.* at Ex. A at 6.) As such, under the agreement, Columbia University retained primary responsibility for asserting the patent and protecting it against infringement. (*Id.* at Ex. A. at 8–9.) Toev was permitted to initiate legal proceedings to protect the patent from infringement only if Columbia University refused to. (*Id.*)

Although the Amended Complaint references patents a number of times. Plaintiffs Obstfeld and Ignition do not assert any patent infringement claims on their behalf. Neither does the Amended Complaint allege that any patents owned by or licensed to Toev have been infringed. At most, Plaintiffs allege that Defendants converted or misappropriated trade secrets belonging to Toev that might have been used by ThermopeutiX in a patent application it submitted in 2005. (*Id.* ¶¶ 51, 77–80 & 85–88.)

## DISCUSSION

### A. Legal Standard Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1) even "a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is

not sufficient." *Frisone v. Pepsico Inc.*, 369 F.Supp.2d 464, 469 (S.D.N.Y.2005) (citations omitted).

■ When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986)); *see also Frisone*, 369 F.Supp.2d at 469–70 ("no presumptive truthfulness attaches to the complaint's jurisdictional allegations"). The court must nevertheless construe all ambiguities and draw all inferences in a plaintiff's favor. *Id.* Ultimately, however, the plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir.2002)).

B.  Diversity Jurisdiction Pursuant to 28 U.S.C. § 1332(a) is Lacking

■ Section 1332 of Title 28, United States Code confers district courts subject matter jurisdiction over actions between "citizens of different States." 28 U.S.C. § 1332(a)(1). The party seeking to invoke diversity jurisdiction must allege facts demonstrating that complete diversity of citizenship exists between all parties to the action. *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157 (2d Cir.1998). "[W]nether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir.1998) (citing 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3608, at 448–49 (2d ed.1984)); 15 J. Moore, Moore's Federal Practice § 102.32, at 102–61–62 (3d ed. 1998); *Grupo Dataf-*

*lux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–71, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004). Section 1332(c)(1) of the United States Code provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

■ Subject matter jurisdiction based on complete diversity of citizenship between the Parties is lacking on the face of the Amended Complaint because both Plaintiff Toev and Defendant ThermopeutiX are alleged to be Delaware corporations. (Am. Compl. ¶¶ 6 & 9.) Plaintiffs nevertheless insist that there is diversity jurisdiction in this matter because Toev should be aligned as a defendant rather than as a plaintiff to reflect the "actual antagonisms between plaintiffs, Toev, and Schwartz, who purported to divest himself of his majority interest in Toev and resign from his position as sole member of the board of directors in furtherance of his breaches of fiduciary duty." (Pls.' Opp. at 4.)

■ "[T]he general rule is that the corporation in a derivative suit should be aligned as a plaintiff since it is the real party in interest." *ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 45 (S.D.N.Y.1992) (citing *Duffey v. D.C. Wheeler*, 820 F.2d 1161, 1163 (11th Cir.1987)). An exception to this rule exists when aligning the corporation as a plaintiff would not create a "real collision of interests." *Smith v. Sperling*, 354 U.S. 91, 97, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). The Supreme Court stressed that the proper alignment of the parties is "a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute." *Id.* Re-aligning a corporation as a defendant, however, is only proper when "[the] corporation is actively antagonistic to plaintiff's interests." *ZB Holdings*, 144

F.R.D. at 45 (*citing Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir.1987)); *see also, Lewis v. Odell*, 503 F.2d 445, 446 (2d Cir. 1974) (holding that a corporation should be aligned as a plaintiff in shareholder derivative action brought against a former board member because the defendant director no longer held a position within the corporation). Thus, "antagonism has generally not been found where the corporation does not, would not, or cannot express opposition to the initiation of the lawsuit." *Netwolves Corp. v. Sullivan*, 2001 WL 492463, at *6 (S.D.N.Y. May 9, 2001).

Defendant Schwartz, according to the Amended Complaint, resigned as the sole member of Toev's board of directors in 2004. (Am. Compl. ¶ 43.) Plaintiffs, however, contend that Schwartz only "purportedly" resigned and that his resignation was ineffective since, "under Toev's by-laws, a director could only resign by giving notice to the board of directors or the president or secretary of Toev." (Pls.' Opp. at 7.) Toev's by-laws clearly permitted Schwartz to resign from the corporation's board of directors at will and effective immediately. (Obstfeld Decl. Ex. C at Art. III, Secs. 1(c) & 9.)[3] It is apparent that Schwartz did in fact resign from Toev's board of directors, and therefore, it cannot be said that Schwartz is any way causing Toev to be presently antagonistic to the interests of the other Plaintiffs.

Plaintiffs · also claim that the alleged "fraud and misdeeds" of corporate officials automatically imply that there is antagonism sufficient to warrant aligning a corporation as a defendant. (Pls.' Opp. at 5 (*citing Smith*, 354 U.S. at 95, 77 S.Ct. 1112).) The alleged transgressions to

which Plaintiffs refer include alleged breach by Defendants of fiduciary duty to shareholders and misappropriation of proprietary information from Toev upon the formation of ThermopeutiX. (*Id.*) These claims of *prior* misconduct, however, are insufficient to warrant realignment because antagonism between parties is determined based on the relationship between the parties at the time the action is commenced. *See Duffey*, 820 F.2d at 1163 (requiring present antagonism for realignment of a corporation).

The Court thus finds that re-alignment of Toev as a Defendant is thus unwarranted. As such, the Court finds that complete diversity of citizenship necessary to support subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) is lacking.

## C. Patent Jurisdiction Pursuant to 28 U.S.C. § 1338(a) is Lacking

■ Under section 1338(a) of Title 28, United States Code, district courts have original jurisdiction over claims "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). Patent jurisdiction under 28 U.S.C. § 1338(a) extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt*, 486 U.S. 800, 809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Thus, "a claim supported by alternative theories in the complaint may not form the basis

**3.** Plaintiffs cite *Inventions Corp. v. Hobbs,* 244 F. 430, 443 (1917) and *Zeltner v. Zeltner Brewing Co.,* 174 N.Y. 247, 253, 66 N.E. 810 (1903) in support of the proposition that, under Delaware law, a resignation is deemed invalid

when it is for the purpose of perpetuating a wrong and is in the actor's own interest. (Pls.' Opp. at 6–7.) The ancient authorities relied upon by Plaintiffs are entirely inapposite to the instant case.

for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.* at 810, 108 S.Ct. 2166.

The mere mention of patents in the pleadings does not necessarily mean that the case involves a substantial question of patent law. *See, e.g., Nokia Corp. v. Interdigital, Inc.,* No.2008–1265, 2008 WL 1777471, at *1 (Fed.Cir.2008) (finding no substantial question of federal patent law in "a contract dispute involving interpretation of terms in the agreement . . .") (*citing Ballard Med. Prods. v. Wright,* 823 F.2d 527, 530–531 (Fed.Cir.1987)); *Pina v. Sony Discos, Inc.,* No. 97 Civ. 6445, 1999 WL 349952, at *2 (S.D.N.Y. May 28, 1999) (noting that the "[m]ere allegation of infringement is not dispositive of the jurisdictional question") (*citing Living Music Records, Inc. v. Moss Music Group, Inc.,* 827 F.Supp. 974, 979 (S.D.N.Y.1993)).

Plaintiffs do not assert that federal patent law creates the cause of action, but rather that "[Plaintiffs' claims] necessarily [depend] on a determination of whether the ThermopeutiX patent application, upon maturation into a patent, would . . . infringe upon the exclusive license to the Columbia patents held by Toev." (Pls.' Opp. at 10.) Plaintiffs allege that the patent application, which has been assigned to ThermopeutiX, "appears to incorporate elements of the Brain Cooling Method." (*Id.* at 10.) They thus contend that their conversion and misappropriation of trade secrets claims necessarily depend on a determination of whether the ThermopeutiX application involves an invention that, should the patent mature, would infringe on the Columbia Patents, and therefore, that patent jurisdiction is proper. (*Id.*) Defendants contend that none of the allegations contained in Plaintiff's Amended Complaint are sufficient to invoke jurisdiction under § 1338(a) because Plaintiffs plead their claims on the basis of state law

and neither identify relevant federal statutes (aside from those involving jurisdiction) nor assert in their Amended Complaint that their right to relief requires the resolution of a substantial question of federal patent law. (Defs.' Mem. at 11.)

Plaintiffs rely on *U.S. Valves, Inc. v. Dray,* 212 F.3d 1368, 1372 (Fed.Cir.2000), in which the defendant gave the plaintiff the exclusive right to "manufacture, use, sell, advertise and distribute the Licensed Product." The Federal Circuit found that the action had raised a substantial question of patent law because "[t]o show that [defendant] Dray sold valves in contravention of [plaintiff] U.S. Valves' exclusive rights to such sales, U.S. Valves must show that Dray sold valves that were covered by the licensed patents." *Id.* The Federal Circuit has recently cautioned however, that "[*U.S. Valves*] does not stand for the proposition that all breach of contract actions involving patents require [ ] a determination [that the defendant's actions infringed the patent . . . [and in addition] the [mere] presence of the patent does not require resolution of a substantial question of U.S. patent law." *Bd. of Regents, Univ. of Texas Sys. v. Nippon Tel. & Tel. Corp.,* 414 F.3d 1358, 1360 (Fed.Cir. 2005).

Plaintiffs' conversion and misappropriation of trade secrets claims rest on a far more nebulous factual basis that the claim involved in *U.S.. Valves,* which raised a straightforward question of whether a certain product infringed upon patents that were exclusively licensed to the plaintiff. Plaintiffs have not actually alleged infringement but rather that Defendants "form[ed] ThermopeutiX for the purpose of their misappropriation of the Brain Cooling Method and other related medical technology that were the trade secrets and proprietary information of Toev . . ." (Am. Compl. ¶ 55.) Moreover, Plaintiffs them-

selves allege that the Columbia Patents only pertain to "a limited component of the Brain Cooling Method." (*Id.* ¶ 18.)

While it is unclear whether ThermopeutiX' 2005 patent application is relevant to the conversion and misappropriation of trade secrets claims, it certainly does not appear to be necessary to consider that patent application or the Columbia Patents in determining those claims. In order to prove their conversion and misappropriation claims against Defendants, Plaintiffs merely need to prove that Defendants took proprietary information from Toev without authorization. The Court finds that Plaintiffs' claims of conversion and misappropriation of trade secrets are attenuated from the issue of patent infringement or potential patent infringement. Plaintiffs have not carried their burden to show that those claims necessarily raise a substantial issue of federal patent law. The Court therefore finds subject matter jurisdiction over this matter under 28 U.S.C. § 1338(a) is lacking. *See, e.g., Bd. of Regents,* 414 F.3d at 1365 (likening the claims raised by the plaintiff with the "contract and misappropriation claims that implicated U.S. patents" raised by the plaintiffs in *Uroplasty* and *AT & T,* which were found by the court to be insufficient to establish subject matter jurisdiction under § 1338(a)); *Uroplasty, Inc. v. Advanced Uroscience, Inc.,* 239 F.3d 1277, 1280 (Fed.Cir.2001) (holding that resolution of claims involving misappropriation of trade secrets, breach of fiduciary duty and breach of contract under Minnesota law were insufficient to establish subject matter jurisdiction under § 1338(a)); *AT & T Co. v. Integrated Network Corp.,* 972 F.2d 1321, 1324 (Fed.Cir. 1992) (holding that the terms of the pertinent Agreements for Assignment of Inventors extended beyond the relevant inventions and thus because AT & T could rely on theories which did not require the reso-lution of federal patent law issues, jurisdiction was not proper under § 1338(a)).

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(1), Defendants' Motion to Dismiss for lack of subject matter jurisdiction is GRANTED.

### CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have failed to demonstrate that the Court has subject matter jurisdiction over this action under either 28 U.S.C. §§ 1332(a)(1) or 1338(a). Defendant's Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is therefore GRANTED. The Clerk of Court is directed to close the docket in this case.

SO ORDERED.