# United States Court of Appeals for the Federal Circuit

---

**INTELLISOFT, LTD., A DELAWARE CORPORATION,**

*Plaintiff/Counterclaim Defendant-Appellant*

**BRUCE BIERMAN, AN INDIVIDUAL,**

*Counterclaim Defendant-Appellant*

**v.**

**ACER AMERICA CORPORATION, A CALIFORNIA CORPORATION, ACER INCORPORATED, A TAIWAN CORPORATION,**

*Defendants/Counterclaimants-Appellees*

---

2019-1522

---

Appeal from the United States District Court for the Northern District of California in No. 4:17-cv-06272-PJH, Judge Phyllis J. Hamilton.

---

Decided: April 3, 2020

---

AARON MARTIN PANNER, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Washington, DC, argued for plaintiff/counterclaim defendant-appellant and counterclaim defendant-appellant. Also represented by COLLIN WHITE.

MATTHEW GORDON BALL, K&L Gates LLP, San Francisco, CA, argued for defendants/counterclaimants-appellees. Also represented by JASON NATHANIEL HAYCOCK; THEODORE J. ANGELIS, JEFFREY CHARLES JOHNSON, Seattle, WA; ANDREW SPIELBERGER, Balaban And Spielberger LLP, Los Angeles, CA.

————————————

Before DYK, O'MALLEY, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

Intellisoft, Ltd. ("Intellisoft") and its president Bruce Bierman (collectively, "appellants") sued Acer America Corporation and Acer Inc. (collectively, "Acer") in California state court, asserting various state law claims, including misappropriation of trade secrets. After more than three years of litigation, Acer sought to plead a patent inventorship counterclaim under federal law and thereafter removed the action to the United States District Court for the Northern District of California. The district court denied Intellisoft's motion to remand and later entered final judgment in favor of Acer.

We conclude that the district court erred by holding that removal was proper under 28 U.S.C. §§ 1441 and 1454. We thus reverse the district court's decision refusing to remand, vacate the district court's judgment, and remand to the district court with instructions to remand the action to California state court.

## BACKGROUND

This case originated from a business relationship between the appellants and Acer dating back to the early 1990s. At that time, the appellants allegedly shared with Acer trade secrets concerning computer power management technology under a non-disclosure agreement ("NDA"). According to the appellants, the NDA allowed

Acer's use of their "Confidential Information" only to "directly further" the evaluation of Intellisoft's product for licensing and restricted Acer from "manufactur[ing] parts or components incorporating the Confidential Information." J.A. 406; Appellants' Br. 5.  The appellants claim that they discovered in the early 2010s that Acer had applied for a patent that incorporated their trade secrets and became the owner of U.S. Patent No. 5,410,713 ("the '713 patent"). The appellants concluded that Acer had misappropriated their trade secrets and violated the NDA.

In March 2014, the appellants filed suit against Acer in California state court, asserting that Acer misappropriated their trade secrets by incorporating them into patent applications that issued as the '713 patent and three other related patents ("the '713 patent family").[1]  The complaint also asserted that Acer unlawfully "incorporate[ed] [their] Confidential Information, products, and/or technology in Acer products without having a license."  J.A. 392.  The complaint alleged various other state law claims as well.

In May 2015, Bierman assigned his ownership interest in the trade secrets to Intellisoft and dismissed his claims in the state court action.  On September 25, 2015, Intellisoft filed the operative Fourth Amended Complaint in state court.  On October 26, 2015, Acer filed an answer.

In September 2017, Intellisoft produced three expert reports concerning liability and damages on the trade secret claim.  First, Intellisoft's expert Irving Rappaport concluded that "trade secret and confidential information described in the [']713 [patent] family . . . were created by . . . Bierman," J.A. 2213, and "[he] should have been named [at least] as a co-inventor of the [']713 patent," J.A. 2237. During his deposition, Mr. Rappaport stated that "this is

---

[1]    The three related patents are U.S. Patent Nos. 5,870,613; 5,884,087; and 5,903,765.

not an inventorship dispute case.  It just happens to be the facts in this case." J.A. 1794.

Second, Intellisoft's expert Robert Zeidman opined that "Intellisoft's trade secrets were disclosed by Acer in the patent specifications," pointing to the written description and claims of the '713 patent family as corresponding to various aspects of the purported trade secrets.  J.A. 2276.  He also concluded that Acer's computer products could not comply with the Advanced Configuration and Power Interface ("ACPI"), an industry power management standard, without using the technology disclosed in the '713 patent family.  Because the '713 patent family incorporated the trade secrets, Mr. Zeidman concluded that the computer products "would [have] need[ed] to incorporate Intellisoft's trade secrets." J.A. 2276–77.

Lastly, Intellisoft's expert Brian Napper, relying on Mr. Zeidman's report, and assuming that all Acer computers complied with the ACPI industry standard and incorporated the trade secrets, calculated damages based on a theory that Acer should have paid Intellisoft royalties for using the trade secrets.

Trial was scheduled to begin in November 2017.  On October 30, 2017, Acer "e-filed" a "Cross-Complaint of Acer Defendants for Declaratory Relief" against the appellants, seeking a declaration that "Bierman properly was not named as an inventor of any of the '713 Family of Patents and . . . is not entitled to an inventorship correction under 35 U.S.C. § 256." J.A. 622.  Referring to Mr. Rappaport's expert report and deposition, Acer alleged that "Bierman [was] asserting an inventorship claim," J.A. 624, and sought declaratory relief that "Bierman properly was not named as an inventor of [the '713 patent family]," J.A. 622.

In California state court, a party may file a "cross-complaint" setting forth a "cause of action he has against any of the parties who filed the complaint . . . against him." Cal. Civ. Proc. Code § 428.10(a).  Such a "cause of action"

is equivalent to a counterclaim under the Federal Rules of Civil Procedure Rule 13. Acer was required to "obtain leave of court to file [the] cross-complaint" because it had already filed its answer to Intellisoft's complaint. *See* Cal. Civ. Proc. Code § 428.50(c). The state court confirmed that Acer's "Cross-Complaint is considered **lodged** (pending approval of a stipulation & proposed order for filing of same, or absent a stipulation & order, an ex parte application/order)." J.A. 1388 (emphasis in original).

Also on October 30, 2017, Acer removed the action to the United States District Court for the Northern District of California under (1) 28 U.S.C. § 1441 providing removal of an action which the district court would have original jurisdiction and (2) 28 U.S.C. § 1454 providing removal of an action where a party asserts a patent counterclaim. In its Notice of Removal, Acer stated that section 1441 removal was proper because Intellisoft's state law claim for trade secret misappropriation arose "under federal patent law—specifically, 35 U.S.C. § 256."[2] J.A. 303. Acer's basis for section 1441 removal was also Mr. Rappaport's opinion that "Bierman should have been named as an inventor" under federal patent law. J.A. 302. Acer asserted that removal was proper under section 1454 because its cross-complaint alleged a patent inventorship claim. After removal, on November 20, 2017, Acer filed a First Amended Counterclaim, seeking a declaration under 35 U.S.C. § 256 that Bierman properly was not named an inventor of the '713 patent family. Acer alleged that Intellisoft "intended

---

[2]    Intellisoft also pleaded claims for breach of contract, intentional misrepresentation and fraudulent concealment, and accounting in its Fourth Amended Complaint. Acer argues only that the trade secret claim raised a federal issue.

to . . . try numerous other patent law issues, including patentability, patent validity, claim construction, and patent infringement." J.A. 1283.

On November 27, 2017, Intellisoft moved the district court to remand the action to state court. Intellisoft argued that there was no disputed federal issue because its state law trade secret claim did "not require determination of inventorship" under federal patent law and Acer's cross-complaint was not "[o]perative" due to Acer's failure to obtain leave of court. *Intellisoft, Ltd. v. Acer Am. Corp.*, No. 17-CV-06272 (N.D. Cal. 2017), ECF 21 at 2, 12, 20.

The district court denied Intellisoft's motion to remand. It held that section 1441 removal was proper because Intellisoft "ha[d] only advanced one theory of liability and that theory necessarily raise[d] substantial patent law issues," J.A. 16, and the case "boil[ed] down to an inventorship dispute," J.A. 12. The district court concluded that "the inventorship issue [wa]s not just an alternate theory that [the] plaintiff might [have] use[d] to show liability and damages" but was the "only theory of its case." J.A. 10. The district court also held that section 1454 removal was proper, reasoning that the statute did not require the patent counterclaim to be pleaded in an operative pleading and that it did not matter "[w]hether or not defendants' cross-complaint was allowed by the [state] court." J.A. 17–18.

Having declined to remand the case to state court, in December 2018, the district court granted summary judgment in favor of Acer with respect to Intellisoft's state law claims, reasoning that Intellisoft failed to prove under federal patent law that Bierman was the inventor of the '713 patent family claims. Based on this failure, the district court concluded that Intellisoft could not show trade secrets ownership and damages. It also held that the claims were time barred. The parties thereafter stipulated to an entry of judgment on the inventorship counterclaim

in favor of Acer.  In February 2019, the district court entered final judgment in favor of Acer based on its summary judgment on Intellisoft's state law claims and the parties' stipulation regarding Acer's inventorship counterclaim.

The appellants appeal, arguing that removal was improper and seeking a remand to state court.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Section 1441 Removal

We first consider whether removal was proper under section 1441.  That section generally provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States."  28 U.S.C § 1441(a).  Section 1338(a) of Title 28 provides in part that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress related to patents."  The propriety of section 1441 removal depends here on whether Intellisoft's state law claims could be brought in federal court pursuant to section 1338.  We review de novo whether the district court had section 1338 jurisdiction, and apply Federal Circuit law.  *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1311 (Fed. Cir. 2016).

When a plaintiff brings only a state law claim, as here, the district court will have original jurisdiction "over [the] state law claim . . . if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  The Supreme Court has explained that only a "special and small category" of cases would meet all four requirements.  *Id.* (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

Addressing the first prong in the *Gunn* test, Acer contends that Intellisoft's trade secrets misappropriation claim necessarily raised patent law issues: (1) Intellisoft had to prove Bierman is the sole inventor of the '713 patent family to establish ownership of the trade secrets and (2) Intellisoft's expert offered a claim construction and infringement analysis with respect to the '713 patent family to show liability and damages.

Acer's arguments do not establish that Intellisoft's trade secret claim necessarily raised patent law issues. First, Intellisoft did not need to prove inventorship under federal law to establish ownership. Although Intellisoft's expert Mr. Rappaport stated that Bierman was an inventor of the claims in the '713 patent family as a factual matter, Intellisoft did not need to prove that statement was true but needed to show only that Intellisoft by assignment from Bierman was the owner of the trade secrets. In other words, Intellisoft's burden was to satisfy the ownership standards for trade secrets under California law rather than to prove that Bierman is the inventor of the '713 patent family, and ownership under state law did not require proof of patent inventorship. The ownership issue thus did not necessarily depend on patent laws.

Second, Intellisoft did not need to establish patent infringement to prove trade secrets misappropriation. Here, Intellisoft's expert Mr. Zeidman compared the trade secret, '713 patent family, and ACPI standard to conclude that Acer misappropriated the trade secrets by incorporating them into the patents and Acer "would [have] need[ed] to incorporate [the] trade secrets" into its products to comply with the ACPI, a standard by itself that incorporated the trade secrets disclosed by the patents. J.A. 2277. Intellisoft had to show only that Acer misappropriated ("used" or "disclosed") the trade secrets under California state law. *See* Cal. Civ. Code § 3426.1. The '713 patent family was only being used as evidence to support Intellisoft's state law claims. This analysis required no construction of the

patent claims or proof that Acer's products "infringed" the '713 patent family under 35 U.S.C. § 271.

Third, Intellisoft's damages case did not necessarily depend on the resolution of patent law issues. Its expert Mr. Napper calculated damages in the form of royalties that Intellisoft would have received from Acer for using the trade secrets since 1997, assuming a royalty rate from the parties' 1992 software agreement. But this agreement was a software license for Intellisoft's Bookmark product and it neither included a patent license nor referenced the '713 patent family. Mr. Napper's damages calculation also presumed that Acer's products incorporated the trade secrets based on Mr. Zeidman's analysis. To prove such damages, however, Intellisoft did not need to establish that Acer's products infringed the '713 patent family. Thus, the damages issue also did not necessarily depend on the resolution of patent law issues.

We have made clear that a plaintiff's reliance on a patent as evidence to support its state law claims does not necessarily require resolution of a substantial patent question.

In *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001), the plaintiff alleged that its former executive officer, who became the defendant's chairman, "used and divulged [the plaintiff's] trade secrets . . . by acts that included the preparation and filing of [the defendant's patent] application." *Id.* at 1279–80. We held that "[t]he . . . patent may be evidence in support of [the plaintiff's] allegations, but the mere presence of the patent does not create a substantial issue of patent law." *Id.* at 1280. Thus, the plaintiff's reliance on a patent to prove misappropriation of trade secrets did not "necessarily depend[] on resolution of a substantial question of federal patent law." *Id.* at 1279–80 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)). We have

reached similar conclusions in other cases. *See Bd. of Regents, Univ. of Tex. Sys., ex rel. Univ. of Tex. at Austin v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1362–63, 1365 (Fed. Cir. 2005) (state law claim of tortious interference did not necessarily require resolution of a federal patent law issue just because the plaintiff sought to show ownership of information incorporated into its U.S. patent); *Krauser v. BioHorizons, Inc.*, 753 F.3d 1263, 1265–67, 1269 (Fed. Cir. 2014) (state law claim of ownership of the defendants' dental systems allegedly incorporated in the defendants' patents did not depend on resolution of a federal patent law issue); *id.* at 1269 ("A claim of <u>ownership</u> does not necessarily require consideration of patent law <u>inventorship</u>." (emphasis in original)).

The Tenth Circuit likewise held that using a patent as evidence for a misappropriation claim does not give rise to section 1338 jurisdiction in *Russo v. Ballard Med. Prod.*, 550 F.3d 1004 (10th Cir. 2008). In *Russo*, the plaintiff allegedly shared trade secrets concerning catheter devices with the defendants under a confidential disclosure agreement. *Id.* at 1007–08. The plaintiff asserted that the defendants' patents misappropriated his trade secrets. *Id.* at 1010. The court held that "the fact that patents may be used as evidence in aid of a trade secret claim is not the same thing as raising a substantial (or really, any) question of federal patent law." *Id.* (citing *Uroplasty*, 239 F.3d at 1280).

Because Intellisoft's trade secret claim did not "necessarily depend[] on resolution of a substantial question of federal patent law," *Uroplasty*, 239 F.3d at 1279 (quoting *Christianson*, 486 U.S. at 809), we need not address other prongs of the *Gunn* test. The district court did not have jurisdiction under section 1338(a), and the state law claims could not be removed under section 1441.

## II. Section 1454 Removal

Acer alternatively claims that removal was proper under section 1454 because of its inventorship counterclaim. Section 1454 provides:

> A civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights may be removed to the district court of the United States for the district and division embracing the place where the action is pending.

28 U.S.C. § 1454(a). We review de novo and apply Federal Circuit law on whether removal was proper under section 1454. *See GeoTag*, 817 F.3d at 1311.

Acer argues that the language "action in which any party asserts a claim for relief" of section 1454 did not require it to plead the counterclaim in an operative cross-complaint. According to Acer, what matters is that the cross-complaint was purportedly "filed"—received by the state court—regardless of whether it was legally operative. We disagree.

We conclude that removal under section 1454, like removal under section 1441, requires that the claim supporting removal must be contained in an operative pleading. Section 1441 allows removal if an action over which the district court would have original jurisdiction was "brought" in the state court. Courts have held that a claim is "brought" under section 1441 only after the claim supporting federal jurisdiction is pleaded in an operative complaint as opposed to a proposed amendment. *Sullivan v. Conway*, 157 F.3d 1092, 1094 (7th Cir. 1998) ("Until the state judge granted the motion to amend, there was no basis for removal. Until then, the complaint did not state a federal claim. It might never state a claim, since the state judge might deny the motion."); *Freeman v. Blue Ridge Paper Prod., Inc.*, 551 F.3d 405, 410 (6th Cir. 2008).

It is evident that "assert" in section 1454 has the same meaning as "brought" in section 1441. In section 1441, Congress provided that "[o]nly defendants against whom a [federal claim] has been <u>asserted</u> are required to join in or consent to the removal." 28 U.S.C. § 1441(c)(2) (emphasis added). Thus, section 1441 itself uses the word "asserted" as equivalent to the term "brought." Similarly, many other statutes assume that the "brought" language means that the claim giving arise to jurisdiction was asserted. *See, e.g.*, 35 U.S.C. § 271(e)(5) (federal courts have "subject matter jurisdiction in any action brought" under certain Hatch-Waxman provisions); 19 U.S.C. § 1337(f)(2) (the government may recover penalty in "a civil action brought" by the International Trade Commission); 28 U.S.C. § 1332(d)(1)(B), (3)(D) (class action definition and exercise of jurisdiction concern an action "brought" by one or more representatives). We conclude that removal based on an "asserted" claim for relief under section 1454 requires that it must be included in an operative pleading.

A contrary interpretation would mean that the defendant's time to file a notice of removal would begin to run even if the claim had no effect because it was yet to be made part of the case, and would "have the anomalous effect that the removed case lacks federal jurisdiction at the time that it is removed." *Freeman*, 551 F.3d at 410; *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) ("It is axiomatic that a case cannot be removed before its inception."); *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1189 (9th Cir. 2015) (tentative class certification ruling had no "jurisdictional effect"). Consistent with this view, we have held that the defendant's right to removal depends on the "pleading operative at the time" of removal and not on later amendments. *Bd. of Regents*, 414 F.3d at 1360 n.* (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)); *see also Abada v. Charles Schwab & Co.*, 300 F.3d 1112, 1117 (9th Cir. 2002).

Here, Acer's cross-complaint was not a legally operative pleading when it removed the action. Under California law, Acer could have filed the cross-complaint as a matter of right before or at the same time as its answer to the complaint. Cal. Civ. Proc. Code § 428.50(a). But, after that time, Acer was required to "obtain leave of court to file [the] cross-complaint." *Id.* § 428.50(c). California courts have held that a pleading was "ineffective" where the party seeking to file the pleading did not obtain the required leave of court. *People v. Oken*, 324 P.2d 58, 61 (Cal. Ct. App. 1958); *see also Morrow v. Carona*, No. E030000, 2002 WL 1832899, at *2 (Cal. Ct. App. Aug. 12, 2002) (unpublished). Acer admits that the cross-complaint was not legally operative under state law and it would have "needed leave to amend to file the counterclaim." Oral Argument 22:15–21, available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1522.MP3. The district court itself agreed that "[Acer's] cross-complaint did not become operative . . . under the California Code of Civil Procedure." J.A. 4. Because Acer's cross-complaint was not operative, it was never "asserted" under section 1454 and thus there was no basis for removal.

We reach our conclusion by looking at state law not to interpret the patent statute but to determine whether a party satisfied the criteria set forth in that statute. This approach is consistent with *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), which concerned an earlier and different statute, § 28 of the Judiciary Code,[3] that allowed "the defendant or defendants" to remove based on diversity jurisdiction. *Id.* at 103–04. There the Supreme Court held that the word "defendant" was to be construed under Congress's "own criteria, irrespective of local law," and that its meaning excluded the plaintiff who initiated the action

---

[3]    This statute was codified as 28 U.S.C. § 71 at that time.

even if a counterclaim was asserted against him. *Id.* at 104, 108. Similarly, here we construe "assert" in section 1454 under Congress's criteria irrespective of how state courts would interpret that word.

Treating an inoperative patent counterclaim as not being "asserted" is consistent with Congressional policy. Congress intended to keep claims arising under patent laws out of state court proceedings by conferring jurisdiction to only federal courts. *See* 28 U.S.C. § 1338(a). Denying leave to file a federal patent counterclaim in state court is fully consistent with the policy that patent claims should not be litigated in state courts. Any refusal to entertain federal patent claims in state court would serve the purpose of limiting state court jurisdiction over federal patent claims. We note that if the state court denied leave to file the patent counterclaim, Acer would still not have been deprived of its claim because it had "an alternative way to present [its] patent claim[] on the merits in federal court: a separate federal declaratory judgment action." *Preston v. Nagel*, 857 F.3d 1382, 1386 (Fed. Cir. 2017).

As an alternative ground, Acer argues that its amended counterclaim filed in federal court after removal satisfied section 1454. There is no merit to this argument because we have repeatedly held that "[i]t is only the pleading operative at the time the petition to remove was filed . . . that is relevant to determining [the] right to remove[,]" not later amendments. *Bd. of Regents*, 414 F.3d at 1360 n.* (discussing §§ 1338 and 1441 removal); *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1268 n.8 (Fed. Cir. 2007) (same); *see also Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 477 (Fed. Cir. 1993). Section 1454 includes no language that justifies a treatment different from other removal statutes.

Accordingly, we hold that Acer's removal under section 1454 was improper because the October 30, 2017, cross-complaint was not legally operative.

CONCLUSION

For the foregoing reasons, we vacate the district court's judgment and reverse its denial of Intellisoft's motion to remand. We need not resolve the question of whether removal was timely. On remand, the district court must remand the action to California state court.[4]

**VACATED, REVERSED, AND REMANDED**

COSTS

Costs to the appellants.

---

[4]    In ordering remand to state court, we, of course, do not express any opinion concerning the merits of Intellisoft's state law claims.